### UNITED STATES *v.* CORNETT (No. 1347).[1]

GOODS IN TRANSIT, UNITED STATES AND CANADA.
> There was no compliance with customs regulations governing goods in transit; and, moreover, the goods here were taken out of the customs custody by the importer or his agent and into his own possession while in the United States. The law is mandatory that no refund of duties may be had in such a case as that.

United States Court of Customs Appeals, May 28, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34568 (T. D. 34090).
   [Reversed.]
   *William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Frank L. Lawrence,* special attorney, on the brief), for the United States.
   Submitted on record by appellee.

   Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:
   In due course of transportation a bill of goods was carried from St. Stephens, New Brunswick, to St. Croix, New Brunswick, traveling

---

[1] Reported in T. D. 34531 (26 Treas. Dec., 944).

en route through the United States. The invoice, dated July 10, 1912, shows shipment from Montreal, Canada, to "Mr. Gardner Cornett, Vanceboro, Me., U. S. A." The memorandum, in the nature of a bill of lading, attached to the invoice names the same destination, and adds "Care of customs officer, Lowellton, Me.," and entry for consumption was made at Lowellton, Me., in July of the same year. There is an exhibit in the record which shows exportation from the port of Vanceboro, Me., August 6, 1912, of the merchandise "of which consumption entry was made at Lowellton, Me." Entry was also made at the Canadian port of McAdam, New Brunswick, September 24, 1912, of merchandise imported into this Province from the United States. The last entry of course was in the Canadian customs. Canadian duty was accordingly assessed and paid thereupon.

It thus appears that this shipment of merchandise was invoiced to Vanceboro, Me., U. S. A., was entered for consumption at Lowellton, Me., on the border line, and passed out of the customs custody into the custody of the owner or importer or his agent. It further appears from the record that the importation into the United States was made in one car, to wit, C. P. 91758, and the exportation into Canada was in another car, C. P. 39606.

Protest was made claiming clerical error. The Board of General Appraisers sustained the protest in the statement as follows:

The record as it stands before us clearly shows that the protestant was not intending to and did not import any merchandise, that the merchandise in question did not enter the United States for the purpose of consumption, but only in transit, and that the entry by the Canadian Pacific Railway was made by mistake.

The statutory difficulties which confront us in the determination of the relief to be afforded under the law in this case are several. Section 2979 of the Revised Statutes affords a form of relief from duties upon goods imported into the United States with the intent of exporting them therefrom in the following language:

SEC. 2979. If the owner, importer, consignee, or agent of any merchandise on which the duties have not been paid, shall give to the collector satisfactory security that the merchandise shall be landed out of the jurisdiction of the United States, in the manner required by the laws relating to exportations for the benefit of drawback, the collector and naval officer, if any, on an entry to reexport the same, shall upon payment of the appropriate expenses, permit the merchandise, under the inspection of the proper officers, to be shipped without the payment of any duties thereon.

This record does not disclose, and on the contrary the facts stated controvert the fact that the importer or his agent took any steps whatsoever to avail themselves of the benefit of this provision of the law.

The more specific and applicable provision is that of section 3005 of the Revised Statutes (as amended in 1900), which provides for the transportation of merchandise from one point in the British Provinces to another point within said provinces as well as through

other adjacent territory through the United States.   The provision reads:

Sec. 3005. (As amended 1900.)   All merchandise arriving at any port of the United States destined for any foreign country may be entered at the customhouse, and conveyed, in transit, through the territory of the United States, without the payment of duties, under such regulations as to examination and transportation as the Secretary of the Treasury may prescribe.

The benefit of that provision can be had, however, only upon compliance with the customs regulations made thereunder.   These are set forth in the Customs Regulations of 1908, articles 445–447.   There is no showing in this record, and there is no pretense made, that the importer or his agent in anywise complied or attempted to comply with these requirements.   He is, therefore, not entitled to the benefit of this provision.

Moreover, it incontrovertibly appears in the record that these goods were taken out of the customs custody by the importer or his agent and into his possession while in the United States.   The provisions of the Revised States are mandatory that in such case no refund of duties shall be had.   Section 3025 in so far as pertinent reads:

Sec. 3025. No return of the duties shall be allowed on the export of any merchandise after it has been removed from the custody and control of the Government.   *   *   *

*Reversed.*